**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| RENEE Y. SMITH )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DIVERSIFIED CONSULTANTS, INC. )<br>)<br>Defendant. ) | Civil Action No. 3:12cv887 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER**
**MOTION TO STRIKE THE PRO HAC VICE ADMISSION OF CINDY SALVO, ESQ.**

COMES NOW the Plaintiff, Renee Y. Smith ("Smith" or "Plaintiff"), by counsel, and as for her Memorandum in Support of Her Motion to Strike the Pro Hac Vice Admission of Cindy Salvo, Esq., she states as follows:

**INTRODUCTION**

Defendant's out-of-state national counsel, Cindy Salvo, now admitted pro hac vice, has demanded the *exclusion* of her local Sands Anderson counsel, Andrew Biondi, from communications between counsel in this matter and, further, that Plaintiff's counsel interact primarily with her associate John Brigandi [1], a New Jersey attorney not admitted in Virginia, the Eastern District of Virginia, or in this case, and therefore not properly before this Court. Mr. Biondi's exclusion from participation in this matter has resulted in the Defendant's scattershot filing of boilerplate, cut and paste objections to all discovery; not providing even the basic "collection call logs" that most Defendant debt collectors provide at the time that they make their Rule 26(a)(1) disclosures; and failing to withdraw these objections after being provided with several warnings, as an advance copy of the Plaintiff's Motion to Overrule Objections, and a

---

[1] Further, Mr. Brigandi does not appear in the list of attorneys in Ms. Salvo's firm as shown on her website. Exhibit "A", retrieved May 17, 2013.

1

week to comply. It has similarly refused to include Mr. Biondi in these very serious discussions. Finally, in direct contravention of Fourth Circuit guidance discussed herein, Ms. Salvo has personally signed the scant Responses to Interrogatories served by the Defendant, thus making herself a fact witness subject to deposition, and rendering her continued representation in this matter inappropriate.

Plaintiff's counsel does not bring this motion lightly. However, the Defendant's actions, through its New Jersey counsel, have demonstrated that it intends to employ the "four corners defense" approach to discovery, without an understanding of the way that discovery proceeds in the Eastern District of Virginia where discovery deadlines and rules are strictly enforced. Additionally, without the involvement of local counsel to rein in this behavior -- heightened further by the Defendant's repeated demands that Plaintiff's counsel must take these issues up with an attorney who is not admitted in this District, this case, or properly before this Court, to the exclusion of local counsel – Plaintiff is left with no alternative but to seek intervention from this Court such that discovery can proceed appropriately and expeditiously.

**BACKGROUND**

Plaintiff filed her Complaint against the Defendant alleging violations of the Telephone Consumer Protection Act ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"). Ms. Mikac and Mr. Biondi conducted their 26(f) conference on March 4, 2013. During this conference, the parties agreed that the Defendant would provide its collection call logs with its Rule 26(a)(1) disclosures and that Plaintiff would participate in informal discovery with the Defendant to identify the various numbers at issue such that, for example, the Defendant might understand which numbers were related to Plaintiff's cell phone, her place of employment, or those of her family and friends. The parties and their counsel recognized the need for an early

2

exchange of this information to facilitate settlement. Additionally, Defendant's counsel stated that the Defendant would provide its insurance policy with its initial disclosures. The parties established a cooperative working relationship in which early resolution of the case, or at least a shared understanding of each side's version of the facts, seemed likely.

On March 15, 2013, Ms. Salvo submitted a Motion to Appear Pro Hac Vice (Docket No. 11), which was granted on March 18, 2013 (Docket No. 12). Prior to submitting this Motion, Mr. Biondi sought Plaintiff's consent to the admission, and specifically stated in his draft motion, that he would serve as "lead counsel in this case". Plaintiff agreed to the admission *pro hac vice* on that condition.

After Ms. Salvo's involvement, this case immediately became significantly more adversarial. The same day that her motion for admission was granted, the Defendant provided its Rule 26(a)(1) Disclosures, which did not contain the call logs or insurance policy previously agreed to. In fact, the Defendant later reversed course and claimed in its Rule 26(a)(1) disclosures that it was "not aware of any agreements or policies under which an insurer may be liable". (Plaintiff presumes that the Defendant uses this wordsmithing to indicate that it has not submitted a claim that would trigger the involvement of its insurance company). From March 18, 2013 forward, the Defendant has propounded meaningless, boilerplate objections, has not provided a privilege log, has tendered "responses" personally signed by Ms. Salvo, and has generally obstructed the discovery process.

**ARGUMENT**

I. **Ms. Salvo Has Disregarded the Local Rules of this Court**

"Permission to a nonresident attorney, who has not been admitted to practice in a court, to appear pro hac vice in a case there pending is not a right but a privilege, the granting of which

3

is a matter of grace resting in the sound discretion of the presiding judge." *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957); *see also Bills v. United States*, 11 F. App'x 342, 343 (4th Cir. 2001). Attorneys admitted pro hac vice are "held to the same professional responsibilities and ethical standards as regular counsel". *Belue v. Leventhal*, 640 F.3d 567, 576 (4th Cir. 2011) (quoting *Cole v. U.S. Dist. Ct. for the Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004); *see also United States v. Collins*, 920 F.2d 619, 626 (10th Cir. 1990).

A.  **Ms. Salvo Demanded that Plaintiff's Counsel Ignore Local Counsel in this Case**

This Court clearly requires that an out-of state attorney seeking admission *pro hac vice* obtain local counsel to assist in the litigation of a case. In fact, this Court has repeatedly denied motions for admission *pro hac vice* where the applicant failed to join with local counsel admitted to this Court when submitting his/her application. *See, e.g.*, *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Nolfi*, No. 1:09-CV-00934, 2010 WL 3835103, at *2 (E.D. Va. Sept. 3, 2010) (discussing the denial of admission *pro hac vice* for defendant's counsel because he failed to join local counsel); *United States v. Menner*, No. CRIM. 3:08CR322, 2008 WL 4410939, at *3 (E.D. Va. Sept. 29, 2008) (noting that an attorney can be admitted to this Court *pro hac vice* upon valid application and joining with local counsel); *Crosby v. United States*, No. CRIM.A. 293CR163, 2005 WL 1667739, at *1 (E.D. Va. June 22, 2005) (discussing the denial of admission *pro hac vice* for defendant's counsel because he failed to join local counsel). Throughout these decisions, this Court reiterates the requirement that an attorney not licensed to appear before this court first obtain the assistance of local counsel. This requirement is not a mere formality required only at the time the motion for admission *pro hac vice* is filed, such that a non-admitted attorney can obtain instant admission wherever necessary, but rather demands adherence throughout the litigation. Despite the requirement that out-of-state attorneys not

licensed to practice before this Court litigate *along with* local counsel, Ms. Salvo has exhibited disregard for this requirement by attempting to exclude local counsel from this case and including her refusal to even submit a *pro hac vice* application for her associate Mr. Brigandi.

Specifically, Plaintiff's counsel requested that Mr. Brigandi enter his appearance in this matter if he intended to litigate the case. Unfortunately, Ms. Salvo responded:

"There is no reason why you should not deal with Mr. Brigandi. As a matter of fact, since I am admitted pro hac, there is no need for you to contact local counsel again in this matter. Contact me or Mr. Brigandi exclusively." [2]

Not only has Ms. Salvo demanded that Plaintiff's counsel ignore Defendant's local counsel in this matter, but she has in turn demanded that Plaintiff's counsel deal with an attorney not authorized to practice law here. Mr. Brigandi is not licensed to practice within the Commonwealth, nor is he admitted *pro hac vice* in this case. As an unlicensed attorney in this District, Mr. Brigandi is not required to submit to the Rules of this Court, nor does this Court or the Virginia State Bar have jurisdiction over him. Despite Ms. Salvo's demand that Plaintiff's counsel deal with her and Mr. Brigandi exclusively, the Defendant has refused to move for Mr. Brigandi's admission, while continuing to omit Mr. Biondi from discussions in the case.

This situation has progressed to the point where Plaintiff's counsel will send an email to all counsel, including Mr. Biondi. Ms. Salvo or Mr. Brigandi will then reply and omit their own local counsel from the email chain, forcing Plaintiff's counsel to forward the emails on to him. Presumably, this bizarre behavior occurs because the cost involved with Mr. Brigandi's attempt at *pro hac vice* admission, as well as the cost of meaningful involvement by local counsel, would conflict with Ms. Salvo's apparent "flat fee" business model for defending FDCPA and TCPA cases nationally. [3]

---

[2] Email from Ms. Salvo to Mr. Erausquin (May 3, 2013, 15:39 EST) (attached as Exhibit "B").
[3] Salvo Website, Exhibit "F", retrieved May 17, 2013.

Plaintiff's counsel informed Defendant's counsel that Ms. Salvo's demand for communication "exclusively" with her and Mr. Brigandi was rejected and requested that Mr. Biondi remind them of his role as local counsel.[4] In response, Mr. Biondi stated that he discussed this matter with the Salvo firm attorneys, but again requested that Plaintiff's counsel direct their communications to the Salvo firm attorneys.[5] Plaintiff's counsel then received another response from Mr. Brigandi, again excluding local counsel from the email, in which he indicated that Mr. Biondi is only local counsel and that—in direct contradiction to the representations made by the Defendant when it sought consent to Ms. Salvo's admission—that the Salvo firm attorneys were now "lead counsel in this case". He again requested that Plaintiff's counsel direct all communications to the Salvo firm attorneys. Counsel for both parties then engaged in an unproductive exchanges thereafter in which Plaintiff's counsel would add Mr. Biondi to the emails, and Mr. Brigandi would remove him from the responses.

### B. Ms. Salvo Has Ignored this Court's Discovery Rules

The Eastern District of Virginia is well known, at least by attorneys who regularly practice in this District, to demand a no-nonsense approach to discovery. Attorneys and parties alike are required to engage in the discovery process with cooperation and in a responsible manner consistent with the spirit and purposes of the Federal Rules of Civil Procedure. Discovery provides both parties with mutual information necessary to litigate the case and to promote settlement of the matter. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) (quoting Jochim*s v. Isuzu Motors, Ltd.*, 145 F.R.D. 507, 509 (S.D. Iowa 1992)). In fact, "liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart,*

---

[4] Email from Ms. Mikac to Mr. Biondi (May 9, 2013, 13:44 EST) (email chain attached as Exhibit "C").
[5] Email from Mr. Biondi to Ms. Mikac (May 10, 2013, 11:46 EST), Exhibit "C".

467 U.S. 20, 34 (1984). The strict discovery rules in this District have long been established to promote the early resolution of disputes. In light of the fundamental necessity of discovery, any violation of the Federal Rules undermines the discovery process and wastes judicial resources as it merely causes delays and expense in civil litigation with the need for addition motions and rulings by the court.

Moreover, according to the Advisory Committee's Notes, Rule 26(g) "imposes an affirmative duty" on the parties to the litigation to conduct discovery in a "responsible manner that is consistent with the spirit and purposes of Rules 26 through 37". FED. R. CIV. P. 26(g) advisory committee's notes to the 1983 amendments. *See also Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008). Because the discovery responsibilities rest with the litigants themselves, the Advisory Committee also recognizes the importance that the parties act responsibly and avoid abuse during the discovery process. FED. R. CIV. P. 26(g) advisory committee's notes to the 1983 amendments. The Notes go on to recognize the need for more aggressive judicial control and supervision, using sanctions where necessary not only to penalize those in violation of the Rules, but to deter such conduct from the start. *See id.*; *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to engage in such conduct in the absence of such a deterrent."). Such obstructionist tactics are not to be condoned.

Despite this, the Defendant through its counsel has asserted vague, generalized objections and claims of privilege and other protections from disclosure without compliance with the

Federal Rules of Civil Procedure.[6] Additionally, the objections are inappropriate and simply designed to avoid providing any response at all to discovery. For example, the Defendant claims that Plaintiff's interrogatory asking it to "[d]escribe all means Defendant has to determine if a number is a cellular number" is not relevant to the case. In reality, this interrogatory lies at the heart of Plaintiff's claims that the Defendant willfully violated the Telephone Consumer Protection Act by knowingly placing numerous robo-dialed calls to Plaintiff's cell phone. Similarly, one of Plaintiff's requests for production requests the text of any voicemail or pre-recorded message left for the Plaintiff. Again, the Defendant objects to this request as "not relevant and not likely to lead to the discovery of admissible evidence."

Further, the Defendant provided only minimal answers, if any at all, in response to Plaintiff's discovery requests, none of which comply with the Rules of this Court. The Defendant has not produced a single document in this case, despite that its answers to Plaintiff's first set of discovery were due on April 23, 2013. It has admitted that it is withholding documents "until a Confidentiality Order is entered", but has failed to move for one.[7] Even when its answers direct Plaintiff to "see the Account Notes", the Defendant never provided this document. The very few "answers" that the Defendant did provide are not sufficient, such as its response to Plaintiff's Interrogatory No. 16 asking it to "identify the person(s) who participated in the Defendant's decision to use a dialer system to collect alleged debts." The Defendant evasively responded – "the executives of DCI".[8]

Finally, the Defendant has completely failed to provide any sort of privilege log as required. The Defendant objected to nearly every single one of Plaintiff's discovery requests on

---

[6] Defendant's Responses to Plaintiff's First Set of Interrogatories and Plaintiff's First Requests for Production of Documents are attached as Exhibits "D" and "E", respectively.
[7] See, e.g. Defendant's Response to Interrogatories 9, 10, 11 and 25. Exhibit "D".
[8] Defendant's Response to Interrogatory No. 16, Exhibit "D", pg. 6.

the basis of attorney-client privilege, but has failed to provide any privilege log at all. These are merely a few examples of the Defendant's and Ms. Salvo's disregard for the discovery rules of this District, as Defendant's discovery objections and responses are pervasive with non-compliance—despite Ms. Salvo's certification that she read the Local Rules of this Court which clearly prohibit her conduct.

Ms. Salvo boasts a "Flat Fee" Program on her website, in which she handles all of a particular client's FDCPA, FCRA, and TCPA claims for a monthly flat fee based on the client's average case volume.[9] While Plaintiff does not argue that this type of fee agreement itself violates any rules governing the practice of law, Plaintiff questions the incentive it provides Ms. Salvo to litigate this case with the least amount of work as possible. The lack of time and effort evidenced in the Defendant's objections and responses to Plaintiff's first set of discovery supports the notion that Ms. Salvo failed to conduct a basic inquiry into the appropriateness or truth of the responses she then personally signed and served. Plaintiff's law firm easily maintains the highest volume civil docket in this District. Mr. Bennett and Mr. Erausquin share in excess of 1,000 appearances in this District alone. But they have only tried less than ten cases in the past two years. The reason for this (in addition to the outstanding job performed by this District's magistrates in the role as mediators) is that when attorneys follow the Rules and cooperate in discovery, the parties reach a mutual understanding of the facts, and cases settle. In this case, the parties are two months into discovery, and nearly a month after its answers were due, the Defendant has not provided a single document. Ironically, and in the face of her client's own sweeping non-compliance with discovery, Ms. Salvo threatened Plaintiff's counsel with a motion if Plaintiff did not voluntarily and informally identify her cell phone numbers prior to

---

[9] Salvo Law Firm, P.C., http://salvolawfirm.com/business/fdcpa-fcra.html (last visited May 17, 2013) (attached as Exhibit "F"

9

such time as her discovery responses were due.[10] In good faith, in the interest of judicial economy, given this threatened baseless motion, Plaintiff provided all of the cell phone numbers known to be at issue, believing that somehow this charitable gesture would spark the Defendant's own interest in discovery compliance. However, not a single page of discovery has yet been produced and the Defendant has yet to withdraw a single of its objections, while insisting that Plaintiff's counsel "discuss" these objections with Defendant's out of state counsel and exclude their local Sands Anderson counsel from these and other conversations in the case. Plaintiff respectfully submits that this Court's involvement is now warranted.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court strike the Pro Hac Vice Admission of Ms. Salvo, order the direct involvement of Sands Anderson with all future matters in this case, and grant Plaintiff any such further relief that the Court deems just and proper.

                                      Respectfully submitted**,**
                                      **RENEE Y. SMITH**

                                      By:_____/s/_____
                                                   Of Counsel

Matthew J. Erausquin, VSB No. 65434
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Telephone:    (703) 273-7770
Facsimile:    (888) 892-3512
matt@clalegal.com

---

[10] Email from Ms. Salvo to Mr. Erausquin (May 7, 2013, 16:14 EST), Ex. "G"

# CERTIFICATE OF SERVICE

       I hereby certify that on this 17th day of May, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Andrew Biondi
SANDS ANDERSON PC
2300 Bank of America Center
1111 East Main Street (23219)
P. O. Box 1998
Richmond, V A 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
Email: abiondi@sandsanderson.com

Cindy D. Salvo
THE SALVO LAW FIRM, PC
185 Fairfield Avenue, Suite 3C/3D
West Caldwell, New Jersey 07006
Telephone: (973) 226-2220
Facsimile: (973) 900-8800
Email: csalvo@salvolawfirm.com

       *Counsel for the Defendant*

       /s/
Matthew J. Erausquin, VSB No. 65434
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Telephone:     (703) 273-7770
Facsimile:     (888) 892-3512
matt@clalegal.com